IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 06-CR-30061 |
| ) | |
| BENNIE M. LACY, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This cause comes before the Court on Defendant Bennie M. Lacy's Motion to Suppress Evidence (d/e 9) (Motion to Suppress). The motion is fully briefed, and pursuant to Local Rule 72.1, the District Judge has referred the matter to this judge for an evidentiary hearing and Report and Recommendation. See Text Order, October 3, 2006. After carefully considering all of the submissions of the parties, hearing evidence on the matter, and pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Motion to Suppress be DENIED.

## I. BACKGROUND[1]

Lacy is charged in a one-count Indictment (d/e 1) as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  The matter came before this Court for evidentiary hearing on the instant Motion on November 9, 2006.  The Government called one witness, Officer Robert Ogelsby, who has been an officer with the Springfield Police Department since March 2005.  The Defense did not call any witnesses.

Based on the testimony heard in open court, at approximately 6:37 a.m. on May 31, 2006, Officer Oglesby received a dispatch reporting a disturbance at 19th and Brown Streets in Springfield, Illinois.  Dispatch had received a call from an individual identified as "Patricia" who reported that a black male, with a black hat and outfit was walking southbound and waving a black gun around.  The caller also reported that there was a heavy set white female with white shirt and shorts present.

Officer Ogelsby notified dispatch that he would respond to the call. Approximately two to three minutes after receiving the initial dispatch, Officer Ogelsby arrived at the intersection of 19th and Brown.  He was traveling southbound on 19th Street in his marked squad car as he

---

[1] **This Report and Recommendation is prepared without the benefit of a transcript.**

approached the intersection.  When he reached Brown Street, Officer Ogelsby turned eastbound onto Brown Street.  As he was turning, Officer Ogelsby saw a black male with a black ball cap, a black shirt, and longer jean shorts standing in the roadway, facing toward 19th Street.  From the officer's perspective, the male was standing near the middle of Brown Street, a little towards the right side of the road.  Officer Ogelsby testified that it was daylight and he also had the headlights of his squad car on.  The officer testified that he stopped his squad car because the male matched the description he had received from dispatch.  At this point, the male was approximately six to eight feet in front of the squad car.  The officer testified that he did not recall seeing any individuals other than the male in the area.

Without any prompting by Officer Ogelsby, the male immediately raised his hands over his head.  This motion caused the male's shirt to rise up.  While the male's arms were raised, the officer saw the outline of a pistol in the male's right front shorts pocket.  The officer testified that he saw what appeared to be the silhouette of a revolver and that he noticed a bulge that appeared to be the cylinder.  Officer Ogelsby asked the male to walk to the front of the squad car and to place his hands on its hood, which

he did.  Officer Ogelsby then approached the male from behind and handcuffed him, for officer safety reasons, because Ogelsby was the only officer on the scene.  While he was handcuffing the male, the officer explained the situation, informing the male about the phone call tip that had been received.

After handcuffing the male, the officer reached into the male's right front shorts pocket, pulled out a revolver, and laid it on the hood of the squad car.  As the officer did this, the male stated that he would have told the officer the handgun was there if the officer had asked.  The officer then placed the male under arrest.  Officer Ogelsby identified Lacy in court as the male that he had encountered on May 31st.

The officer testified that, because of the nature of the dispatch and the fact that he had seen the outline of a handgun, he did not pat the suspect down.  Rather, he reached directly into the pocket to remove the weapon.  He testified that he felt the handle of the handgun as he began to reach into the pocket.  Officer Ogelsby described the handgun as an old western-style .22 caliber revolver.  The officer testified that the revolver

was rusted, giving it a dark brown color.  The officer described the revolver as larger than the officer's palm with a 3.5 to 4 inch barrel.[2]

## II.  ANALYSIS AND CONCLUSIONS OF LAW

Lacy has filed a Motion to Suppress the physical evidence seized from his person and any statements allegedly made by him to officers of the Springfield Police Department at the time of and subsequent to his arrest.  Lacy asserts that Officer Ogelsby's actions in stopping and frisking him violated the Fourth Amendment.  Specifically, Lacy asserts that the "anonymous" tip about a man carrying a gun was insufficient to justify the search in question, citing Florida v. J.L., 529 U.S. 266 (2000).  The Court disagrees.

The Fourth Amendment protects against unreasonable searches and seizures, a right which extends to "citizens on the streets of our cities." Terry v. Ohio, 392 U.S. 1, 8-9 (1968).  The Fourth Amendment's general prohibition against warrantless searches does not apply to "Terry stops."  In Terry, the Supreme Court authorized the use of warrantless investigatory stops that are limited in scope and executed through the least restrictive

---

[2]On cross examination of Officer Ogelsby, defense counsel highlighted several facts to which Ogelsby testified that were not included in Ogelsby's written reports of the incident.  The Court notes that the highlighted differences between the reports and the testimony focused on omissions rather than contradictions.  Overall, the Court deemed the young officer to be a credible witness.

means reasonable. Law enforcement officials do not need probable cause to justify a Terry stop. Rather, the Court held that an officer, who has reasonable suspicion supported by articulable facts "in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous," is entitled "to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." Id. at 30. The Supreme Court has defined reasonable suspicion as "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." United States v. Cortez, 449 U.S. 411, 417 (1981).

"In evaluating the reasonableness of an investigatory stop, we look first to see whether the officers' actions were justified at the inception of the stop and next to see whether the stop was reasonably related in scope to the circumstances which justified the stop in the first place." United States v. Swift, 220 F.3d 502, 506 (7th Cir. 2000) (citing United States v. Smith, 3 F.3d 1088 (7th Cir. 1993)). "Whether the stop is reasonable may depend in part on the nature or the length of the intrusion." Id. (citing cases). The Court, however, must not be overly focused on any one factor. "The proper

analysis involves a consideration of the totality of circumstances known to the officers at the time of the stop.  The totality of the circumstances includes the experience of the law enforcement agent and the behavior and characteristics of the suspect." Id. (internal quotations and citations omitted).

Defendant relies heavily on J.L.  In J.L., an anonymous caller reported to law enforcement officials "that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." J.L., 529 U.S. at 268.  An unspecified amount of time after the tip was received, two police officers were dispatched to the bus stop.  They arrived at the bus stop approximately six minutes later and saw three black males "hanging out." Id.  One of the three, J.L., was wearing a plaid shirt.  "Apart from the tip, the officers had no reason to suspect any of the three of illegal conduct.  The officers did not see a firearm, and J.L. made no threatening or otherwise unusual movements." Id.  Nevertheless, "[o]ne of the officers approached J.L., told him to put his hands up on the bus stop, frisked him, and seized a gun from J.L.'s pocket." Id.  The Supreme Court held the search to be invalid under the Fourth Amendment.

The present case, however, is distinguishable from J.L.  In the instant

case, at the outset of the encounter between Lacy and Officer Ogelsby, without any prompting by Officer Ogelsby, Lacy raised his hands over his head, causing his shirt to rise up. When Lacy raised his arms, Officer Ogelsby saw the outline of a pistol in Lacy's right front shorts pocket. Although Ogelsby testified that he could not be sure that the object in the pocket was a pistol, he stated that it appeared to him to be one.

Under Illinois law, a person commits the offense of unlawful use of a weapon

> when he knowingly: . . . (4) Carries or possesses in any vehicle or concealed on or about his person except when on his land or in his own abode or fixed place of business any pistol, revolver, stun gun or taser or other firearm, except that this subsection (a)(4) does not apply to or affect transportation of weapons that meet one of the following conditions:
> (I) are broken down in a non-functioning state; or
> (ii) are not immediately accessible; or
> (iii) are unloaded and enclosed in a case, firearm carrying box, shipping box, or other container by a person who has been issued a currently valid Firearm Owner's Identification Card. . . .

720 ILCS 5/24-1. Therefore, at the point that Lacy raised his arms, the officer had both reasonable suspicion that criminal activity, the unlawful use of a weapon, might be occurring and, furthermore, that the person with whom he was dealing might be armed and dangerous. This is sufficient to justify the officer's detention of Lacy. Because Ogelsby was the only officer

on the scene, it was reasonable for him to place Lacy in handcuffs for officer safety reasons. The search that Ogelsby conducted of Lacy's person was not overly intrusive. After placing Lacy in handcuffs, Officer Ogelsby reached directly into the pocket in which he had seen the outline of a pistol. As the officer began to place his hand into Lacy's pocket, he felt the handle of the handgun. There is no evidence that the officer attempted to conduct a general search of Lacy's person or even that he sifted through the contents of Lacy's right pocket.

These circumstances distinguish the present case from J.L., in which the Court expressly noted that "[a]part from the tip, the officers had no reason to suspect any of the [individuals] of illegal conduct." J.L., 529 U.S. at 268. In the instant case, as set forth above, the search was justified under Terry based solely on the officer's observations once he arrived on the scene. However, in addition to his observations, Officer Ogelsby had been advised by dispatch that a citizen named Patricia with a given phone number had complained of a black male with a black hat and a black outfit walking and waving a black gun. According to the dispatch report, the relevant portion of which was received in written form on Officer Ogelsby's squad car computer as he was driving to the scene, Patricia had been

walking with the male.  Government's Ex. 1.  The tip in the instant case is much more analogous to that upheld by the Seventh Circuit in <u>United States v. Drake</u>, 456 F.3d 771 (7th Cir. 2006), than to the anonymous tip in <u>J.L.</u>  Patricia provided her first name, had an identified telephone number, and provided an eyewitness account of an emergency situation.  When Officer Ogelsby arrived on the scene, he saw an individual who substantially matched the description provided.  Given the totality of circumstances known to law enforcement at the time of the search, Officer Ogelsby's detention of Lacy was justified, and the scope the officer's search was reasonable given the circumstances that justified the stop in the first place.

     Turning to Lacy's request to suppress statements, the Court notes that Lacy fails to identify any basis for suppression of statements that is independent of the search in question.  The Court notes that there was no evidence of any incriminating statements made by Lacy in response to questioning by Officer Ogelsby.  In fact, the only statements by Lacy that are in evidence were volunteered without prompting by the officer.  To the extent Lacy seeks to suppress such statements as the fruit of the challenged search, the District Court should reject his argument, because,

as set forth above, the search in question was a valid search and, as such, did not violate Lacy's Constitutional rights.

### III. CONCLUSION

For all the above reasons, I recommend that Defendant's Motion to Suppress Evidence (d/e 9) be DENIED.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after being served with a copy of this Report and Recommendation.  See 28 U.S.C. § 636(b)(1).  Failure to file a timely objection will constitute a waiver of objections on appeal.  See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986); Local Rule 72.2.

ENTER:   November 15, 2006

s/ Byron G. Cudmore
_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE