IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  06-30061 |
| | ) | |
| BENNIE M. LACY, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant Bennie M. Lacy's Objections to Magistrate's November 15, 2006, Report and Recommendation to Deny Motion to Suppress Evidence (d/e 14) (Objection).  United States Magistrate Judge Byron G. Cudmore issued a Report and Recommendation (d/e 13), in which he recommended denial of the Defendant's Motion to Suppress Evidence (d/e 9) (Motion).  The Court reviews the Report and Recommendation and Objection de novo.  28 U.S.C. § 636(b)(1)(C).  Upon de novo review, the Court overrules the Objection and adopts Judge Cudmore's Report and Recommendation.

1

STATEMENT OF FACTS

On May 31, 2006, at approximately 6:37 a.m., Springfield Police Officer Robert Oglesby received a radio dispatch report that a man was waving a gun in the air at the corner of 19th and Brown Streets in Springfield, Illinois. Oglesby was on patrol in the area, and he notified the dispatcher that he was responding to the call. Oglesby's squad car was equipped with a computer and printer. The dispatcher sent a copy of the report to the computer in Oglesby's squad car. Oglesby printed the report about ten to fifteen seconds after receiving the radio dispatch. <u>Transcript of Proceedings (d/e 17) (Transcript)</u>, at 20. The report stated that an individual named Patricia had reported that a black male, wearing a black outfit and black hat was walking southbound on 19th Street and waving around a black gun. Patricia stated that also present was a heavy-set white female dressed in a white shirt and shorts. The report included Patricia's telephone number. The report also stated that the caller was "walking w/him." <u>Government Exhibit 1</u>, Dispatch Report.

Within three minutes of receiving the radio dispatch, at approximately 6:40 a.m., Oglesby arrived at the corner of 19th and Brown Streets. He saw Defendant Lacy, a black man, standing in Brown Street. It was daylight,

2

and the visibility was clear. Oglesby also had the headlights on his squad car turned on. Oglesby saw no one else present. <u>Transcript</u>, at 5-6.

Lacy was in the street facing Oglesby's squad car. Lacy was wearing a black baseball cap. The cap had a white "A" on the front of the cap, and white piping around the brim of the hat. Lacy was also wearing a black, Nike brand overshirt or jacket over a white undershirt. The overshirt was decorated with insignias of Georgetown University. The front of the overshirt was decorated with: (1) an embroidered, four-inch capital "G", outlined in white; (2) a blue basketball logo inside the "G"; and (3) an embroidered white Nike symbol. Each sleeve had a stripe of abstract decorations in white approximately two inches wide. The word "Hoyas" was embroidered on the back of the shirt in blue letters outlined in white. In addition, blue material approximately two inches wide radiated from the collar to the under side of the sleeves. The blue material was visible from the front of the shirt. <u>Defendant's Exhibits 3 and 4</u>, <u>Photographs of Defendant's Overshirt and Hat</u>. Lacy was also wearing blue jeans shorts with a picture of rolling dice embroidered on the back of the shorts. <u>Defendant's Exhibits 1 and 2</u>, <u>Photographs of Defendant's Shorts</u>. Lacy did not tuck the overshirt into the shorts, and the bottom of the overshirt

3

covered much of the shorts when Lacy was standing with his arms down at his sides.  Transcript, at 25-26.

Oglesby stopped the squad car about six to eight feet from Lacy.  Transcript, at 8.  Oglesby believed that Lacy fit the description of a black male in a black outfit and cap.  Oglesby started to exit his vehicle.  Before Oglesby said anything to Lacy, Lacy raised his hands into the air.  Id.  In doing so, he lifted his overshirt up.  Oglesby then saw something in Lacy's front jeans pocket. Oglesby's written report of the incident stated only that Oglesby saw an object in the pocket.  Government Exhibit 2, Police Report, at 2.  At the hearing, Oglesby testified that he saw what appeared to him to be the silhouette of a revolver in Lacy's front pocket, including a bulge that appeared to be in the shape of the cylinder.  Transcript, at 8-9.  Oglesby asked Lacy to walk to the front of the squad car to place his hands on the hood. Oglesby handcuffed Lacy for officer safety reasons.  He explained this to Lacy as he was handcuffing him.  Id.  Oglesby then reached into the pocket where he saw the silhouette and removed a revolver.  Oglesby did not pat down Lacy before reaching into the pocket to remove the weapon.  Id.  Oglesby then placed Lacy under arrest.

Lacy was charged with the crime of felon in possession of a weapon,

in violation of 18 U.S.C. § 922(g)(1). Indictment (d/e 1). Lacy then filed the Motion to Suppress Evidence. He asks the Court to exclude from the evidence in this case the revolver and any of Lacy's subsequent statements to law enforcement officials. He argues that Oglesby conducted an unreasonable search of Lacy in violation of the Fourth Amendment, and that all of this evidence must, therefore, be excluded.

## ANALYSIS

The Fourth Amendment prohibits unreasonable searches and seizures. Terry v. Ohio, 392 U.S. 1, 8-9 (1968). Officers, however, may conduct investigative stops when the officers have a reasonable, articulable suspicion that criminal activity is afoot. These stops can include limited searches for weapons that might be used to assault the officers. Id., at 30. A reasonable suspicion is "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." United States v. Cortez, 449 U.S. 411, 417 (1981).

In this case, Oglesby had a dispatch report that a black man in a black outfit with a black cap was waving a gun around. Lacy fit this general description. The report, though, also said that a white woman was present, and the caller was walking with Lacy. When Oglesby arrived, no one else

5

was present in the street.

Lacy, however, raised his arms and revealed the silhouette of a revolver in his front jeans pocket before Oglesby said anything. At this point, Oglesby had a reasonable suspicion that criminal activity was afoot. Carrying a concealed weapon is a crime in Illinois. 720 ILCS 5/24-1. The silhouette of the revolver, along with Lacy's attire, and Lacy's actions in voluntarily raising his hands, corroborated the dispatch report that a black man with a gun was in the street at that location. Given this cumulative amount of information, Oglesby had a reasonable suspicion that supported a decision to conduct an investigative stop and limited search. See <u>United States v. Muhammad</u>, 463 F.3d 115, 122 (2nd Cir. 2006) (officer's observations at the scene sufficiently corroborated anonymous tip to justify investigative stop).

The only remaining issue is whether the search was reasonable and limited under the circumstances. An officer may handcuff a suspect during an investigative stop to protect himself if he believes the suspect may be armed. <u>United States v. Smith</u>, 3 F.3d 1088, 1096 (7th Cir. 1993). That was the case here. Normally, an officer would pat the individual's outer clothing before reaching into a pocket, but Oglesby reached directly into the

6

pocket where the silhouette of the gun was located without conducting a pat-down search. Under the circumstances, the Court agrees with Judge Cudmore that this search was reasonable. Oglesby did not need to pat down Lacy since he had already seen the outline of the gun. Indeed, Oglesby limited his search of Lacy because he did not subject the rest of Lacy's outer clothing to a search; he only reached in one spot where he had already reasonably suspected the presence of a weapon. Under the circumstances, the search was limited and reasonable.

Lacy points out that an anonymous tip is unreliable and does not justify an investigative stop. Florida v. J.L., 529 U.S. 266, 275 (2000). Lacy also points out that the dispatch report did not include any description of the decorations on Lacy's overshirt and hat. Lacy argues that this omission calls into question the accuracy of the report. He also points out that no one else was present when Oglesby arrived at the scene. The report stated that a white woman was present and the caller was walking with Lacy.

The Court does not need to decide whether the dispatch report alone would have supported Oglesby's decision to stop Lacy. Oglesby saw Lacy raise his hands into the air when Lacy saw a police officer and saw the

7

silhouette of a revolver in Lacy's front pocket before he stopped Lacy. These observations, combined with the report's description of the black man in a black outfit with a black hat, gave Oglesby ample reason to stop Lacy. Muhammad, 463 F.3d at 122.

Lacy argues that Oglesby's testimony that he saw the silhouette of a revolver in the pocket was not credible. Judge Cudmore found Oglesby to be credible. The Court, in its discretion, gives some weight to that finding. United States v. Raddatz, 447 U.S. 667, 683 (1980). The Court has also reviewed the Transcript and finds Oglesby to be credible. The Court notes that if Oglesby wanted to lie, he could have claimed that he patted Lacy down first. Oglesby did not do that; he admitted that he did not follow normal procedures, but reached directly into Lacy's pocket without a pat-down search. After careful review of the Transcript, the other evidence presented at the hearing, and the parties' other filings, the Court concludes that Oglesby was credible.

Lacy also argues that he was not wearing a black outfit with a black hat because his shorts were blue and his overshirt and hat included various decorations that were not black. The argument is not persuasive. The decorations on the hat and overshirt also do not change the fact that the

primary color of the hat and shirt was black. (See: <u>Defendant's Exhibits 3 and 4 from hearing held 11-9-06)</u>. Further, the overshirt hung out over the shorts when Lacy had his arms at his side. Thus, when Oglesby first saw Lacy, Lacy appeared to be dressed in a black outfit with a black hat. He matched the general description in the report. Once Lacy raised his hands voluntarily, and Oglesby saw the outline of the revolver in Lacy's pocket, the investigative stop and search were reasonable.

THEREFORE, the Objection (d/e 14) is OVERRULED. The Court adopts the Report and Recommendation (d/e 13). The Motion to Suppress Evidence (d/e 9) is DENIED.

IT IS THEREFORE SO ORDERED.

ENTER: January 30, 2007.

FOR THE COURT:

s/ Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE